Good morning, may it please the court. My name is Pamela Cleary and I am the attorney for the appellants Jill and Jason Ostby and their son Jacob, who is now a nine-year-old third grade student at Anna McDonald Elementary School in Manhattan, Illinois. At the time this action commenced, Jacob was about 38 inches tall and weighed about 44 pounds. We're here on an appeal of the decision made by a hearing officer pursuant to the Individuals with Disabilities Education Act and its Illinois state counterpart. The hearing office... Now, the standard of review at this stage is highly deferential to the findings of the impartial hearing officer and the district court. Can you, for us, identify the most significant factual or legal errors made in those forums? That would be helpful. Yes, I will. The issue here is whether the school district violated the Individuals with Disabilities Education Act when it decided to remove Jacob from his home school kindergarten program and transfer him to a self-contained classroom in another school district ten miles away. That is a question that we're here on and part of that depends on the IEP that was in place. Our position, and it has to do with least restrictive environment, the least restrictive environment requires, to the maximum extent appropriate, children with disabilities are educated... You know, we really know all of that. What I'm trying to get to is what was... Give us a legal error. Give us a significant factual error that was made. Well, what we're looking at here is basically Jacob's kindergarten year. It is the 2013-2014 school year where he started attending general education at Wilson Creek Elementary. Jacob started experiencing some behavioral difficulties and a behavior intervention plan was not actually created and implemented until March 26th of 2014. At that time, it's pretty late in the school year. Between the school district spring break, there was, I believe, a day off for snow and the mother's... Mother is a teacher in another school district. Mother had a different spring break. Between the implementation from March 26th of 2014 until the end of the school year and the following IEP meeting on the intervention plan that was developed by the school and the parents was basically in effect for 20 days, 20 school days. During that time, that 20 school days, the school district was changing the terms of that behavior program and increasing the percentages that Jacob needed to meet in order to get a passing mark for that day. Jacob was required to have a point sheet and every day, with the exception of, I believe, two days, he made his social and emotional goal for that time. What we're looking at is the IEP is written for a one-year period of time and we're looking at a behavior intervention plan that was in effect for less than one quarter. The error is that the district court was looking at the child needed to meet all of these guidelines, all of these expectations between April 26th, 2014 and June 5th of 2014. However, again... Now, Ms. Currie, the district court hinted that the parents in the agreement on the child's placement going forward and when you said the Anna McDonald school, that sounds to me like it might be a regular classroom. Can you update us on the status of negotiations and if they came to agreement, would this Jacob does remain in the general education classroom. He is at a different school now, Anna McDonald, because the Wilson Creek Elementary School ended at second grade. I believe they have kindergarten first and second and then at third grade they move on to another school within the district. So, yes, he remains in general education for two reasons. Number one was statehood. He was in statehood for quite a long period of time. And secondly, yes, the school district and the parents had later agreed that the change was not going to be implemented. That has to do with the behavior intervention plan that was proposed by the school district at that June 5th IEP meeting. That provision... Is it a matter now that he is in a general classroom? Yes, he remains in general education. Now, is this matter, I'm sorry, is this matter moot? Oh, I don't believe so because the the case of least restrictive environment has never really been decided by the court. The way the district court case stands, it approves the hearing officer's findings that even though the child is on grade level, doing well, and in fact above grade level in math, that the district can still move him. And we believe that is the clearly erroneous... I can't move any child at any time, I suppose, after going through all of this. Well, yes, but there is a series, there's a process that has to be decided. We have the least restrictive environment that ensures that special education is a service for children instead of a place where they are sent. The least restrictive environment requires the public agency under 34 CFR 300.114 that each public agency must ensure that to the maximum extent appropriate, children with disabilities are educated with children who are non-disabled. Well, that's where he's at now. That is correct, that's where he's at now, but that was only the benefit of stay put and later arguments. Had the parents not appealed the hearing officer's decision and gone through a year and a half in district court, we don't believe that that would be the situation. And that's just speculation at this point. Okay, the district court suggested that the plaintiffs waived the issue of the unilateral changes to the behavior intervention plan by not raising it below. Is the district court correct that the issue was waived? And if the district court is not, where was it preserved? Well, we believe it was in the arguments for the least restrictive environment, Your Honor. The child is not to be removed unless special classes or removal of children with disabilities occurs only when the nature or severity of their disability is such that the education and the regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. We believe it is part of the least restrictive environment. There were seven issues in the underlying district court. But I mean, how long has he now been in the general population, so to speak? When he is in third grade. Uh huh. I'm sorry. He's in third grade right now. And this case started out when he was in the general education kindergarten. Okay. Well, where was he in first grade? Where was he in second grade? General ed. General ed. So he's always been in the general ed. Right. And that was only because the parents had filed their legal remedies. What about the damage? Where's the damage? The damage to this child? It was the continuing litigation. Well, but... Okay. Okay. I think from what you've just said that there is a serious probability that this lawsuit is moot. And we will ask both sides to file within 14 days of today a supplemental memoranda addressing the question whether this case is moot. Thank you, Ms. Cleary. Thank you. Ms. Sinars, I take it you agree with the statement that the child has never been moved into a separate or a special classroom? That is correct, sir. Is there any pending proposal to move him?  All right. Well, we'll take that as a yes. Well, I trust you will explore this in the mootness question, but if he has never been moved and if there is no pending proposal to move him, it certainly looks like the parties are asking for an advisory opinion. Yes, sir. In response to the inquiries that were presented by Judge Hovner, I submit to you that when you review this case and you look for errors either of law or of fact in the hearing officer's decision or the district court decision, you will find none. And therefore, I ask that you affirm the decision that was made by the district court that in June of 2014, the least restrictive environment that was appropriate for Jacob was the SELF program. The court applied the correct legal standard in analyzing what the least restrictive environment should be for any student who receives special education-related services under the IDEA. The court specifically cited to this court's decision in Beth B., which was the 2002 decision and then reaffirmed in the Ross decision in 2007. And in that case, the court essentially has instructed hearing officers and courts to ask, has the child's education in the general education environment been satisfactory, and if not, was the removal of that child from the general education environment, did that allow for the student to participate in general education as much as is appropriate. And that is the standard that the court applied and spent extensive time from a review of the decision, which I'm sure you have, the 60-page decision, which reviews in detail both the hearing officer's findings of fact and credibility and analysis, as well as the judge's own independent verification  and the record that was before the court. With regard to the allegations that the plaintiffs have made with respect to Jacob's education being satisfactory, I submit to you that those are not accurate when reviewing the decision before the court. Jacob's education was not satisfactory either behaviorally when looking at that assessment from a behavioral or social-emotional perspective or an academic perspective. And this court has specifically found in the Alex R. decision that behavioral issues alone can be the basis for removal of a student to a more restrictive environment. I submit to you that when you... Where in the record will we find support for the district's claim that a behavior intervention plan was implemented in January of 2014 because Ms. Cleary maintains that it was not implemented until April of that year when there were only 21 days left in the school year? Can you resolve that factual... Absolutely. Yes, absolutely, I certainly can. During the course of Jacob's kindergarten school year, there were several IEP meetings that were held by the parties during which behavioral strategies and interventions were reviewed. The IDEA provision provides that if a child's behavior is impeding his learning or the learning of others, the IEP must include behavioral strategies including positive behavioral interventions designed to address that behavior so that it does not interfere with that student's learning or the learning of others. If you look at the IEPs that were held in October 1, 2013, November 9, 2013, and January 9, 2014, all of those included reviews of significant behavioral strategies that were in place for the student. The student had a very much individualized behavioral support plan that was included in his educational programming from the very beginning. So when you look in October, you will see that the classroom behavior intervention plan was significantly modified to provide for regular and routine and more frequent reinforcement for Jacob, that he had a specific sensory diet, meaning that he was engaging in specifically planned activities designed to address his behavior and allow him to receive the appropriate interventions in order to more appropriately regulate his behavior. There was a before school activity. There were three breaks that were given during the school day. There was frequent reinforcement. In October, his IEP was amended to provide that he was also going to receive an additional 30 minutes per week of social work services, so he went from 30 minutes a week to 60 minutes per week. They also assigned the assistant in his program as a one-to-one aide. Those supports were reviewed in November. And then in January, additional supports were reviewed and discussed as a part of his educational program. And I submit to you all of this information is included in the IEP documentation. There's an October 1 IEP and an IEP amendment. There's a November 1 parent review meeting. And then there's a January 9, 2014 IEP meeting. And I submit to you in October and again in January if you review page 2 of that document and then in January review the comprehensive behavior intervention plan that was developed at that meeting, you'll see that there were behavior supports that were in place long before March and extensive behavior supports that were in place long before March. In January, there were further amendments. I'm sorry, ma'am? I did. In special education, it's a common term that's used. It's what's called a sensory diet, so it's a variety of activities. Do you need me to explain further? I realize what you said. I wasn't sure you said what you said, but you said what you said. I did, and it is explained in the briefing as well as numerously explained in testimony of the occupational therapist who was responsible for designing and training the staff on how to implement that. Her name is Mary Ellen Tolbert. At the January IEP meeting, in addition, Jacob's IEP social work services were again doubled so that he was receiving 120 minutes per week of social work intervention, and additional supports were put into place to allow for a break card and a variety of different activities that were designed to address his behavior. Yes, his IEP was reviewed again in March, March 24, 2014. At that time, the team again reviewed the behavioral intervention plan and the functional behavioral analysis. Interestingly, though, what I would submit to you is when you review those two documents from January and again from March, you'll see that the same target behaviors were identified, meaning that the team had still identified and consistently said that physical aggression and noncompliance were the most significant behaviors that were interfering with Jacob's learning and the learning of others, and continued to adopt the same sorts of interventions for the student with some additional modifications and supports for the student. One of the primary issues that I want to call to your attention, though, is that Jacob's IEP includes five goals. Each of these goals is behavioral or social-emotional in nature. There are no academic goals included in Jacob's IEP. Of the five goals that were included in Jacob's IEP, Jacob did not meet any of the benchmark expectations for those behavioral goals or social-emotional goals during the course of his kindergarten year. And when you review the final report, the goal updates that are included as part of the June 5, 2014 IEP meeting, you'll see specific percentages and specific number of incidents of either noncompliance or aggression, all of which fall below the expectations that were established by his IEP team. Four of those goals were established in January, and one additional goal relating social skills was added in March. And so I submit to you that during that entire six-month period when the staff was working intensely on trying to model and shape and improve Jacob's behavior, he was not demonstrating the expected growth or satisfactory progress under his educational program. But he's doing enough to do okay in general education, right? At this point in time? Is that your question, then? Yes. The district is not recommending that Jacob, at his most recent IEP meeting, be placed in the SELF program. That is correct. But the decision that you all have to make is your review of the June 4, 2014 IEP meeting, and considering the information that the IEP team had at that point in time, the decision that they made was reasonable, which is the standard that this court applies, and that they were appropriate in determining that Jacob was not being satisfactorily educated in the general education environment. When you look at evaluating that environment for implementation of Jacob's specific IEP, you will see that he was not, as I said, making progress towards any of his behavioral goals. And those were the only goals that were included in the IEP. And there's no suggestion that that IEP and that those goals were inappropriate for him. That's never been an allegation. So I submit to you that ultimately, the behavioral intervention plan, excuse me, that Jacob's behaviors were impeding his learning and preventing him from obtaining a satisfactory education. Plaintiffs point to the point sheet that Jacob received and alleges, one, that that shows evidence that Jacob was making progress, appropriate progress, under his behavior intervention plan, and two, that the district was unilaterally changing something inappropriately. And I submit to you the plaintiff is confused as to what the behavior intervention plan addresses and what the point sheet addresses. The point sheet was a reinforcement system. It allowed for Jacob to receive frequent, positive reinforcement from staff as to how his behaviors were during the school day. And that ultimately... Thank you, Counselor. Okay. Thank you. The case is taken under advisement.